IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESMOND GODSON : CIVIL ACTION
:
v. :
: NO. 12-CV-3455
CITY OF PHILADELPHIA, et al. :

MEMORANDUM AND ORDER

JACOB P. HART                                                              October 1, 2013
UNITED STATES MAGISTRATE JUDGE

I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Desmond Godson, filed this action under 42 U.S.C. § 1983 and Pennsylvania state law, against the City of Philadelphia, Warden William Lawton, Commissioner Louis Giorla, and Corrections Officers David Williams, Bruce Thomas, James Graham, Clifford Jeudy, and Claudius DiBondi. The action arises out of an incident that occurred on June 17, 2010, at the Philadelphia Industrial Correctional Center prison System, where Godson was a pre-trial detainee. He alleges that the defendant correction officers violated his rights under the Fourth, Eighth and Fourteenth Amendments by subjecting him to excessive force. Godson also alleges that the City of Philadelphia had a policy, custom or practice of condoning, and therefore encouraging the use of excessive force against pretrial detainees, as well as an unconstitutional policy, custom or practice of failing to train its staff. Godson also asserts claims against the corrections officers for assault and battery, intentional infliction of emotional distress, negligent infliction of emotional distress, and conspiracy.

Godson alleges that on June 17, 2010 at about 2:30 or 3:00 p.m., shortly before a shift change, he was transferred from punitive segregation F-1 unit. He asserts that shortly after he

entered the cell, Defendants Thompson, Graham and Williams entered his cell. After he put his hands behind his head to be handcuffed, he claims the defendants beat him about his head and body, knocking out one of his teeth, knocking him to the floor, and causing him to bleed internally, with blood choking him and coming out through his nose. Godson dep at p. 29. Godson was then escorted out of the F-1 unit to J unit. Just outside of the J unit, Godson spit blood, striking defendant Juedy in the eye. Godson alleges that Juedy then threw him against a wall and punched him in the head near the eye using handcuffs wrapped around his knuckles. Id. at 30-31. Godson was transported to the medical unit.

The Philadelphia Prison System Disciplinary Board conducted an investigation of this incident, which resulted in defendants Thompson and Williams being suspended for 30 days and defendant Graham being suspended for 20 days for failure to follow appropriate procedures and certain General Orders. On June 19, 2010, as part of the investigation, Godson submitted a written statement, an "Inmate Account of Involvement in Use of Force Incident". Id. at 6. Godson pled guilty to Aggravated Harassment by a Prisoner and was convicted for spitting blood and saliva at Corrections Officer Jeudy. (Exhibit D to Defendants' Motion).

Currently pending before this Court is Defendants' Motion for Summary Judgment. Defendants argue that the federal claims must be dismissed because Godson has failed to exhaust all available administrative remedies as mandated by the PLRA. Defendants also move to dismiss the claims against the City and individual defendants, as well as the state law claims. In his response to the Defendants' Motion for Summary Judgment, Plaintiff has informed the court that he is not pursuing the claims against the city of Philadelphia, Commissioner Louis Giola, Warden William Lawton or the individual claim against Claudius DiBondi. Plaintiff also named

2

Defendants Giorla and Lawton in their individual capacities, but did not plead individual claims against them. Finally, he has also informed the court that he is not pursuing his conspiracy claim or his claim for negligent infliction of emotional distress.

II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Williams v. Borough of West Chester, 891 F.2d 458, 463-464 (3d Cir. 1989). A factual dispute is "material" only if it might affect the outcome of the case. Anderso v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For an issue to be "genuine", a reasonable fact finder must be able to return a verdict (or render a decision) in favor of the non-moving party. Id. On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative. Brewer v. Quaker State Oil Refining Co., 72 F.3d 326, 331 (3d Cir. 1995). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987); Baker v. Lukens Steel Co., 793 F.2d 509, 511 (3d Cir. 1986). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

Notably, however, Rule 56(e) sets forth the burden of the nonmoving party as follows:

3

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule must set forth the specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). See Roa v. City of Bethlehem, 782 F. Supp. 1008, 1014 (E.D. Pa. 1991) (a party resisting a motion for summary judgment must specifically identify evidence of record which supports her claim and upon which a verdict in her favor may be based.) With respect to an issue on which the non-moving party has the burden of proof, the burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. at 325.

   III.   DISCUSSION

Exhaustion

Defendants assert that Godson failed to exhaust all available administrative remedies before filing this action in federal court, as required by the Prison Litigation Reform Act ("PLRA"). The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983 (2002), the Supreme Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 992. Under Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2382 (2006),

4

exhaustion means "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. at 2384. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id. at 988 (citing Booth v. Churner, 532 U.S. 731, 739, 740 n.5, 741, 121 S. Ct. 1819 (2001)). Failure to exhaust administrative remedies is an affirmative defense that must be proven by the defendants. Brown v. Croak, 312 F.3d 109, 11 (3d Cir. 2002).

Defendants have submitted a detailed affidavit by Patricia A. Powers, a deputy warden and the director of the policy and audit division of the Philadelphia Prison System (PPS), who has worked in that division since 2010 and has nearly 20 years of service in the PPS. See Affidavit attached as Exhibit A to Defendants' Motion. The affidavit sets forth the ways in which an inmate is informed of the grievance procedures. Id. It is undisputed that newly admitted inmates are issued an Inmate Handbook, which includes the grievance process and that the procedures are posted in the prison. It is also undisputed that Godson was aware of this process and that he filed multiple grievances while he was confined. A search of all grievances filed by Godson during the entire period of time that he was housed in the PPS, from June 17, 2010 until February 4, 2012, did not reveal a grievance concerning the alleged constitutional violations by the defendants on June 17, 2010. Id. at par. 18-20. Defendants assert that since none of the incidents he complains of in his federal complaint appears in the PPS automated information system known as "Lock & Track" (LAT), it means he either did not file a grievance for those complaints or he did not comply with the grievance process when he filed them. As defendants note, Godson was aware of the grievance process since he filed six grievances

5

between June 17, 2010 and February 4, 2012.

In response to the defendant's motion, Godson filed a statement, in which he makes the bald assertion that he filed a grievance regarding this incident on July 21, 2010, which was not answered. However, there is simply nothing to support this allegation. See Exhibit A to Plaintiff's Response. In response to Defendants' showing of the absence of any related grievance, Godson has failed to present a copy of the grievance or any receipt. Although the grievance procedures clearly set forth that after attesting to completing an informal process, the inmate shall retain the bottom copy as a receipt of filing and file the remainder of the form, Godson simply argues that it was not mandatory that he retain a receipt. We also note that according to the Procedures for Filing and Processing Standard Grievances, "an inmate may file a formal, written grievance within ten days of the grievable event by completing an Inmate Grievance Form." See Defendant's Exhibit A at p. 108. Therefore, even if Godson filed a grievance on July 21, as he now states, it would have been untimely and therefore would not satisfy the exhaustion requirement. See Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. at 2384 ("a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court.") Accordingly, we must agree with Defendants that given the evidence, Godson either did not file a grievance or did not properly comply with the grievance procedures as he did the six other times that he filed.

In the alternative, Godson claims that his participation in the internal investigation regarding this incident should excuse his failure to exhaust the administrative remedies available to him with the grievance process. Plaintiff's counsel does not cite any authority for his claim

6

that the statement submitted as a part of the internal investigation should excuse exhaustion. He simply argues that the proceeding provided the same opportunity for the prison system to correct itself internally, citing Nyhuis v. Reno, 204 F.3d 65, 74, 76 (3d Cir. 2000). As Defendants note, Nyhuis does not support Godson's claim. Instead the case holds that exhaustion of all administrative remedies, including appeals, is required, whether or not they provide the plaintiff with the relief he seeks in his federal action. Id. at 67.

Although there does not appear to be any Third Circuit case law on this issue, numerous courts have held that participation in an internal investigation is not the equivalent of exhausting a prisoner's administrative remedies under the PLRA. See Panaro v. City of N.Las Vegas, 432 F.3d 949, 954 (9th Cir. 2005); Freeman v. Francis, 196 F.3d 641, 644 (6th Cir. 1999 ("[T]he exhaustion requirement in § 1997e(a) is directed at exhausting the prisoner's administrative remedies in the corrections system, and investigation by another agency does not satisfy the requirement of the statute."). In fact, courts in the Eastern District of Pennsylvania have agreed with the Sixth and Ninth circuits on this issue. See Drain v. McLeod, Civ. A. No. 04-1589, 2007 WL 172349 (E.D. Pa. January 19, 2007); Naranjo v. Brooks, Civ. A. No. 04-1098, 2009 WL 792335 (E.D. Pa. March 25, 2009).

In Drain v. McLeod, Civ. A. No. 04-1589, 2007 WL 172349 (E.D. Pa. January 19, 2007), Judge McLaughlin found that "[n]ot only is [the Sixth and Ninth Circuits'] interpretation consistent with the language of the PLRA as pointed out in Panaro and Freeman, but it is also consistent with what the Supreme Court states are the two main purposes of an exhaustion requirement; the protection of administrative agency authority and the promotion of efficiency," Id., citing Woodford, 126 S.Ct. at 2385. Judge McLaughlin noted that the filing of the "Inmate

7

Account of Involvement in Use of Force Incident" report cannot satisfy exhaustion of the two tiered grievance system. As is the case here, it was undisputed that plaintiff did not comply with this process, by filing a grievance, following up with the Warden and filing an appeal. In Naranjo v. Brooks, Civ. A. No. 04-1098, 2009 WL 792335 (E.D. Pa. March 25, 2009), Judge Kauffman agreed, finding that the grievance the plaintiff handed to an internal affairs investigator did not satisfy the exhaustion requirement. Judge Kauffman held that even if the plaintiff intended to initiate the grievance process by misfiling with the internal affairs investigator, it was not proper exhaustion because he never attempted to follow up with prison officials or file an appeal. Id.

In this case, the internal investigation into the incident was not even initiated by Godson. It was initiated by another employee and although it resulted in action against the officers, it could not have resulted in any relief to Godson. Godson participated in the process by completing a single form. The administrative grievance process available to him involves a two tiered system including the written grievance, which is filed after an informal process and then following up with the warden and filing an appeal. It is undisputed that Godson did not complete this process in connection with the incident involved in this action. There is also nothing to indicate that the process was unavailable to him. For these reasons, this Court cannot hear Godson's federal claims and we will grant Defendant's Motion for Summary Judgment dismissing this action.

IV. CONCLUSION

For the reasons set forth above, I now enter the following:

8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DESMOND GODSON : CIVIL ACTION
:
v. :
: NO. 12-CV-3455
CITY OF PHILADELPHIA, et al. :

<u>ORDER</u>

AND NOW, this 1st day of October, 2013, upon consideration of Defendants' Motion for Summary Judgment (Docket entry #27) and Plaintiff's response to the motion (Docket #36), it is hereby ordered that Defendants' Motion for Summary Judgment (Docket entry #27) is hereby GRANTED and Plaintiff's Complaint is dismissed.

BY THE COURT:

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE